UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| ALAN AHO, | : | |
| --- | --- | --- |
|     Plaintiff, | : | |
| | : | |
|     v. | : | 3:09-cv-728 (CFD) |
| | : | |
| TROOPER ADAM CHITTECK and | : | |
| TROOPER COLLIN KONOW, | : | |
|     Defendants. | : | |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

**I.**	**Introduction**

The plaintiff, Alan Aho, brought this action alleging a violation of his First Amendment rights pursuant to 42 U.S.C. § 1983. Aho also alleges a violation of Conn. Gen. Stat. § 7-6, which he claims also violates his right to due process under the Fourteenth Amendment to the United States Constitution. The defendants, Connecticut state troopers Adam Chitteck and Collin Konow, have filed a motion for summary judgment as to all claims. For the reasons that follow, the defendants' motion for summary judgment is granted.

**II.**	**Factual Background**[1]

On May 21, 2008, a town meeting was held at Griswold Middle School, in Griswold, Connecticut, to consider and vote on whether the Town of Griswold should accept a grant of state land for the construction of a town recreational complex. Aho, a resident of Griswold, attended this meeting in order to hear the discussion and to vote. Aho was also the Republican

---

[1] The following facts are taken from the parties' Local Rule 56(a) statements, summary judgment briefs, and other evidence submitted by the parties including depositions. They are undisputed unless otherwise indicated.

Town Committee Chair for Griswold and believed it was important to prevent this measure from passing.

James Coutu, also a Griswold resident, was seated in front of Aho at the town meeting.[2] Shortly after Aho arrived at the meeting, Coutu stood on a chair in front of Aho and began to direct people entering the auditorium where to sit. Aho asked Coutu to "sit down and shut up," to which Aho claims Coutu responded "shut up fatso." According to Coutu, Aho began disparaging Coutu's haircut and subsequently told Coutu, "I'm going to kick your ass."[3]

Coutu then left the auditorium and called the local barracks of the Connecticut State Police, claiming that Aho had threatened him. Connecticut state troopers Konow and Chitteck responded to Coutu's call; they met Coutu outside the entrance to the school and found him visibly agitated. Coutu explained that Aho had threatened him and the troopers asked Coutu to accompany them into the auditorium to identify Aho. Upon entering the auditorium the troopers saw that a large meeting was in progress and asked Aho to step outside the auditorium with them. The troopers had previously been unaware that a meeting was scheduled and did not know its subject.

Upon exiting the auditorium, Trooper Chitteck informed Aho of Coutu's complaint. Aho denied making any threat and stated that he had come to observe the meeting and vote. However, Aho admitted to the troopers that he may have made a comment about someone's head, but stated that he did so jokingly. As a result, Trooper Chitteck asked Coutu if he knew of

---

[2] Aho did not know Coutu. In addition to being an eligible voter, Coutu was also a "vote counter" for the May 21 meeting.

[3] Aho denies making these alleged remarks. Coutu denies making the quoted statement, also.

any witnesses who could speak about the incident between him and Aho. Coutu suggested that Trooper Chitteck ask Theodore Koziol about the incident. Koziol was not a Griswold resident but was president of the local Griswold youth football league and was acquainted with Coutu through their mutual involvement in Griswold youth football.[4] Koziol told Trooper Chitteck that he had heard Aho threaten Coutu. Based on Coutu's complaint and Koziol's statement, the trooper believed probable cause existed to arrest Aho for breach of peace, in violation of Conn. Gen. Stat. § 53a-181.[5]

Though Coutu initially wanted Aho arrested, the troopers asked if it would be acceptable to Coutu if they gave Aho the option to leave the meeting. Coutu consented and Trooper Chitteck gave Aho the option of leaving the town meeting or being arrested. Aho chose the former and left the meeting before he could vote.

On May 5, 2009, Aho filed this action in this Court against troopers Chitteck and Konow, as well as local Griswold officials Philip Anthony and Normand Sylvestre.[6] The claims against Anthony and Sylvestre have been dismissed and only the claims against the two troopers remain.[7]

---

[4] Koziol could not vote but was present to support the land grant and construction of the recreation complex.

[5] Tim Skidgell, who was seated next to Aho at the beginning of the meeting, was speaking at the hearing at the time of Aho's departure but later claimed that Koziol did not observe the incident and was not in a position to do so. The troopers, however, did not interview Skidgell that night and therefore did not learn of his version of events until after the meeting.

[6] Anthony is the First Selectman of Griswold and Sylvestre is a town meeting moderator for the Town. Both were involved in conducting the May 21 meeting.

[7] The Court dismissed Aho's claims against Anthony and Sylvestre in its February 28, 2011 ruling. Prior to the Court dismissing the claims against Anthony and Sylvestre, Anthony and Sylvestre filed a motion for summary judgment. Because the claims against Anthony and Sylvestre have subsequently been dismissed, the Court denies their motion for summary

Aho claims that the troopers violated his First Amendment rights and due process when they effectively prevented him from voting by threatening arrest. Troopers Chitteck and Konow have moved for summary judgment.

## III. Legal Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000); Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994)). Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134. Consistent with this standard, all evidence favorable to the nonmoving party must be credited if a reasonable jury could credit it. Evidence favorable to the moving party, on the other hand, must be disregarded unless a reasonable jury would have to credit it because it comes from a disinterested source and is uncontradicted and unimpeached. See Reeves v. Sanderson Plumbing

---

judgment as moot.

Prods., Inc., 530 U.S. 133, 150-51 (2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

**IV.     Discussion**

    A.     Aho's Right to Vote

"The right to vote derives from the right of association that is at the core of the First Amendment, protected from state infringement by the Fourteenth Amendment." Storer v. Brown, 415 U.S. 724, 756 (1974) (Brennan, J., dissenting); see Faulkner v. Sadowski, 486 F. Supp. 1261, 1264 (S.D.N.Y. 1980) ("The right to vote, of course, is protected by the first amendment as applied to the states through the due process clause of the fourteenth amendment."). Aho claims that troopers Chitteck and Konow violated his First Amendment right to vote forcing him to leave the May 21 Griswold town meeting. In order to determine if Aho's rights were violated, the Court must determine whether the troopers had probable cause to arrest Aho.

"Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). In determining whether probable cause existed, the court must examine "those facts available to the officer at the time of the arrest and immediately before it." See Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir. 1996). "In testing the sufficiency of probable cause for an officer's action even without a warrant . . . he may rely upon information

received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." Jones v. United States, 362 U.S. 257, 269 (1960). Furthermore, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every . . . plausible claim of innocence before making an arrest." Curley v. Vill. of Suffern, 268 F.3d 65, 70 (2d Cir. 2001).

The undisputed facts show that troopers Chitteck and Konow responded to a phone call regarding an alleged threat by Aho. Upon arriving at the meeting, the troopers spoke with Coutu, who identified Aho to the troopers and informed them of Aho's threat. After speaking with Aho, Trooper Chitteck went back into the auditorium and spoke with Koziol, who corroborated the material aspects of Coutu's claim. These facts support the troopers' belief that there was probable cause to arrest Aho for breach of peace.[8] Conn. Gen. Stat. § 53a-181 states, in relevant part, that "[a] person is guilty of breach of the peace in the second degree when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person . . . threatens to commit any crime against another person or such other person's property. . . ."

> That statute prohibits "[t]rue threats," in which the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. . . . The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats protect[s] individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur.

---

[8] As mentioned above, the troopers were not aware of Skidgell's claim that Koziol did not see the confrontation between Coutu and Aho. Thus, Skidgell's claim does not affect whether Koziol's statement was a reasonable corroboration of other matters known to the troopers at the time of the determination of probable cause.

State v. Gaymon, 899 A.2d 715, 719 (Conn. App. Ct. 2006) (citing State v. DeLoretto, 827 A.2d 671, 680 (Conn. 2003)); see State v. Moulton, 991 A.2d 728, 740 (Conn. App. Ct. 2010) (stating that a true threat is one "that would be viewed by a reasonable person as one that would be understood by the person against whom it was directed as a serious expression of an intent to harm or assault, and not as mere puffery, bluster, jest or hyperbole"). Troopers Chitteck and Konow were responding to a threat of physical violence that was subsequently corroborated by a third party. Therefore, even when looking at the facts in the light most favorable to Aho, the evidence shows that the troopers had probable cause to arrest Aho for breach of peace.[9]

Aho contends that probable cause for the breach of peace arrest is irrelevant because the troopers' conduct prevented him from exercising his right to vote. Essentially, Aho claims that his right to free speech and his right to vote trump the troopers' basis to arrest him. Aho cites Cornelius v. NAACP Legal Defense 7 Education Fund, Inc., 473 U.S. 788 (1985), for his view that speakers may only be excluded from public forums in order to serve a compelling state interest. But Cornelius involved an executive order excluding certain groups from solicitations for contributions, not the removal of individuals from a public forum based on probable cause for arrest. Consequently, there is no conflict between Cornelius and Curley, as the court in Curley stated that once probable cause has been established "an inquiry into the underlying motive for the arrest need not be undertaken." Curley, 268 F.3d at 73. Therefore, when probable cause to

---

[9] There is also no right to arrest. See Chapman v. United States, 376 F.2d 705 (2d Cir. 1967); see also Cotz v. Mastroeni, 476 F. Supp. 2d 332, 367 (S.D.N.Y. 2007) (finding no constitutional violation where an officer gave a disruptive individual the choice to leave a polling place or face arrest.). Accordingly, it was not improper for the troopers to give Aho the choice to leave the town meeting and not face arrest. Probable cause gave them the option to do so, but did not require it.

arrest exists, police may arrest an individual even if the arrest could limit the exercise of that individual's First Amendment rights. See Cotz, 476 F. Supp. 2d at 367 (finding no constitutional violation where an individual was removed from a polling place and denied her First Amendment right to vote because probable cause existed for her arrest); Morgan v. Cnty. of Nassau, 720 F. Supp. 2d. 229, 238 (E.D.N.Y. 2010) ("[I]f a police officer has probable cause to arrest a person, this will serve as a complete defense to any claim of First Amendment retaliation based on that arrest." (citing Curley, 268 F.3d at 73; Singe, 63 F.3d at 120)); Genia v. N.Y. State Troopers, No. 03-CV-0870, 2007 WL 869594, at *23 n.32 (E.D.N.Y. Mar. 20, 2007) ("Defendants are correct that if probable cause existed to arrest plaintiffs for any crime, including disorderly conduct, plaintiffs are barred from asserting valid First Amendment claims."). Additionally, there are no decisions that hold that the probable cause standard is higher when the First Amendment is implicated because the arrest occurs in a public forum. Finally, as to the decisions that determine an individual's First Amendment rights based on the applicable forum, see Byrne v. Rutledge, 623 F.3d 46, 53 (2d Cir. 2010), there is no support for the view that the type of forum is an element that must be taken into account by police when determining whether there is probable cause to arrest. Consequently, Aho's contention that the troopers had a higher burden to establish probable cause because the incident occurred within a public forum is not supported; the existence of probable cause warranted the arrest of Aho, even though arrest would have deprived Aho of his right to vote and despite Aho's claims that such actions also violated his right to due process.

Aho also points to Terminiello v. Chicago, 337 U.S. 1 (1949), and suggests that the U.S. Supreme Court's decision in that case to overturn a breach of peace conviction arising from the

content of a speech given by the defendant at a rally in a Chicago auditorium also negated the existence of probable cause at the time of arrest. However, the Supreme Court's opinion in Terminiello only served to assure wide berth to First Amendment protection of the substance of comments made during a speech in a public forum, see id. at 2–6; it has no application to the situation here where a direct threat of physical injury was made by one in attendance at a public meeting.[10] In addition, the Court's holding in Terminiello did not deny the existence of probable cause at the time of Terminiello's arrest—it merely overturned a conviction. Overturned convictions, without more, do not affect the existence of probable cause because a subsequent conviction is not a requirement for a prior determination of probable cause. See Wright v. City of Waterbury, No. 3:07–cv–306, 2011 WL 1106217, at *3 (D. Conn. Mar. 23, 2011) ("[P]robable cause does not [even] require an officer to be certain that subsequent prosecution of the arrestee will be successful." (quoting Krause v. Bennett, 887 F.2d 362, 371 (2d Cir.1989))); see also United States v. Fisher, 702 F.2d 372, 375 (2d Cir. 1983) (stating that less evidence is required to provide probable cause for an arrest than to support a conviction).

Additionally, the troopers' removal of Aho did not violate Aho's due process rights that he claims result from Conn. Gen. Stat. § 7-6. Section 7-6 is titled "Eligibility to Vote," and relates to the qualification of voters that must be honored by town officials in permitting voting

---

[10] Aho's claim is distinct from a First Amendment retaliation claim in which an individual is arrested and prosecuted for engaging in protected speech under the First Amendment. See Sullivan v. Stein, 487 F. Supp. 52, 84–85 (D. Conn. 2007) ("Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right,' and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." (quoting Hartman v. Moore, 547 U.S. 250, 256 (2006))).

during a town assembly.[11]  There is no dispute that the troopers were not running the town meeting or involved in determining who among those present were eligible to vote on the land issue, but were responding to a call regarding a threat.

Whether probable cause existed is a matter of law under the circumstances here, and the undisputed evidence shows that the troopers had probable cause to arrest Aho for breach of peace.  Therefore, the decision by the troopers to provide Aho with the choice to stay and be arrested or leave peacefully did not violate Aho's First Amendment rights.

### B.     Qualified Immunity

Even if there was not probable cause to arrest Aho, the Court finds that the troopers are entitled to qualified immunity for their actions.  Government officials performing discretionary duties are entitled to qualified immunity if their conduct does not violate clearly established statutory or constitutional rights that a reasonable official would have known about.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The purpose of qualified immunity is to protect officials when they must make difficult "on-the-job" decisions.  See Zieper v. Metzinger, 474 F.3d 60, 71 (2d Cir. 2007).  Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law" by giving "ample room for mistaken judgments."  Id. (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).  In the Second Circuit, the qualified immunity analysis

---

[11] "At any town meeting other than a regular or special town election or at any meeting of any fire, sewer or school district or any other municipal subdivision of any town incorporated by any special act, any person who is an elector of such town may vote and any citizen of the United States of the age of eighteen years or more who, jointly or severally, is liable to the town, district or subdivision for taxes assessed against him on an assessment of not less than one thousand dollars on the last-completed grand list of such town, district or subdivision, or who would be so liable if not entitled to an exemption under subdivision (17), (19), (22), (23), (25) or (26) of section 12-81, may vote, unless restricted by the provisions of any special act relating to such town, district or subdivision."  Con. Gen. Stat. §7-6.

consists of a three-step inquiry examining whether there is an alleged violation of a constitutional right, whether the right was clearly established at the time of the conduct, and—if the right was clearly established—whether the defendants' actions were objectively reasonable. See Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 211 (2d Cir. 2003).

Once again, probable cause is the critical consideration. If probable cause existed then the troopers are entitled to qualified immunity, since they could not have both had probable cause and have violated Aho's clearly established statutory or constitutional rights. Nevertheless, even if no probable cause existed, the troopers are entitled to qualified immunity. "An arresting officer is entitled to qualified immunity from a suit for damages on a claim for arrest without probable cause if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991).

As previously discussed above, the undisputed evidence shows that it was objectively reasonable for the troopers to believe that they had probable cause to arrest Aho for breach of peace under the undisputed factual circumstances that they faced. The troopers responded to Coutu's call, and upon arriving at the Griswold school, were informed by both Coutu and Koziol that Aho had threatened Coutu. Thus, based on these facts, it was objectively reasonable for the troopers to assume that probable cause existed for Aho's arrest for breach of peace and there was no clearly established law that they were violating.[12] Accordingly, troopers Chitteck and Konow

---

[12] Aho claims that the troopers should have considered that they were in a town hall meeting, where an important public issue was being discussed and voted on, before giving Aho the choice to leave or be arrested. Yet there is no dispute regarding the fact that the troopers had no knowledge of the content of the meeting or its purpose, and as discussed in the foregoing analysis, the standard for probable cause is not raised when First Amendment rights are at stake.

are protected by qualified immunity.

## V. Conclusion

For the reasons stated above, defendants' motion for summary judgment [Dkt. #41] is GRANTED. Defendants' Philip Anthony and Normand Sylvestre motion for summary judgment [Dkt. #46] is DENIED AS MOOT.

SO ORDERED this <u>12th</u> day of July 2011, at Hartford, Connecticut.

<u>/s/ Christopher F. Droney</u>
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**

---

No controlling decision of the U.S. Supreme Court or Second Circuit holds otherwise.